**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CHRISTINA D.,**

                                **Plaintiff,**

**v.**

                                                    **20-CV-30**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 21.  Christina D. ("Plaintiff"), who is represented by counsel, brings

this action pursuant to the Social Security Act ("the Act") seeking review of the final

decision of the Commissioner of Social Security ("the Commissioner") denying her

application for benefits.  This Court has jurisdiction over the matter pursuant to 42

U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  Dkt. Nos. 17, 18.  For the following reasons, Plaintiff's motion (Dkt. No. 17)

is denied, and the Commissioner's motion (Dkt. No. 18) is granted.

## BACKGROUND

        On November 29, 2016, Plaintiff filed for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").  Tr. at 61, 76, 165-78.[1]   Plaintiff

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 12.

alleged disability beginning October 9, 2014, based on anxiety, depression, migraines, panic attacks, trigeminal neuralgia, back/neck pain, insomnia, hypothyroidism, diabetes, and genital herpes.  Tr. at 190-91.  Plaintiff's claim was denied at the initial level and Plaintiff requested review.  Tr. at 93-100, 103-04.  Administrative Law Judge Elizabeth Ebner ("the ALJ") conducted a hearing on November 2, 2018.  Tr. at 32-60.  Plaintiff, who was represented by counsel, testified as did a vocational expert ("VE").  Tr. at 32-60.  On January 10, 2019, the ALJ issued a decision in which she found that Plaintiff was not disabled within the meaning of the Act, and therefore, not entitled to benefits. Tr. at 12-30. This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 18, 2019.  Tr. at 1-6. Plaintiff commenced the current action on January 9, 2020.  Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

The claimant bears the ultimate burden of proving disability throughout the period for which benefits are sought.  See 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring her to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. Plaintiff has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's

3

review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process.

*Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five

steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since October 9, 2014, the alleged onset date. Tr. at 18. The ALJ concluded at

step two that Plaintiff's degenerative disc disease of the lumbar spine, degenerative disc

disease of the cervical spine, degenerative disc disease of the thoracic spine, obesity,

migraines, right knee osteoarthritis, trigeminal neuralgia, asthma, sleep apnea,

depression, and anxiety were severe impairments. Tr. at 18. At step three, she

concluded that Plaintiff did not have an impairment or combination of impairments which

met or equaled the Listings, giving special consideration to Listing 1.04 (Disorders of the

Spine), Listing 11.00 (Neurological Disorders – Adult), Listing 12.04 (Depressive,

Bipolar, and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive

Disorders), and Social Security Ruling 02-1p (Consideration of Obesity). Tr. at 18-19.

The ALJ found that Plaintiff retained the RFC to perform sedentary work

as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following restrictions:

she could sit for 45 minutes with the need to stand for a minute or two thereafter without

being off-task or leaving the workstation; she could frequently use hand and foot

controls, could frequently reach, could occasionally handle and finger, could

occasionally climb ramps or stairs, could never climb ladders, ropes, or scaffolds, could

occasionally balance, stoop, kneel, crouch, and crawl, could never work at unprotected

heights, could never be exposed to dangerous moving mechanical parts, and could only

5

occasionally be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration.  Tr. at 19-23.  She was limited to work involving simple, routine tasks, simple work-related decisions, frequent interaction with co-workers, supervisors, and the public, and only occasional changes in the work setting, and she would have to be off-task five percent of the workday, in addition to normal breaks.  Tr. at 19-23.  At step four, the ALJ found that Plaintiff could not perform any past relevant work.  Tr. at 23.  The ALJ then proceeded to step five, where she relied upon the testimony of the VE in finding that Plaintiff could do other work that existed in significant numbers in the national economy, such as the sedentary jobs of Surveillance Systems Monitor, Call Out Operator, and Election Clerk.  Tr. at 24.  Thus, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act, from October 9, 2014, through the date of her decision, January 10, 2019.  Tr. at 25.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 17, 18.  Plaintiff argues that the ALJ erred in not finding Plaintiff's fibromyalgia to be a medically determinable impairment.  Dkt. No. 17-1, pp. 13-17.  The Commissioner counters that the ALJ properly considered Plaintiff's fibromyalgia in reaching the RFC and that Plaintiff has not shown that her fibromyalgia further limited her functioning.  Dkt. No. 18-1, pp. 18-29.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err in reaching her decision and that the RFC was substantially supported.

**The ALJ's Alleged Step Two Error**

At step two of the disability analysis, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted by* 32 F. Supp. 3d 253 (N.D.N.Y. 2012). The step two severity standard "is de minimis and is meant only to screen out the weakest of claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). At the same time, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

An ALJ's failure to recognize a particular impairment as severe does not always compel reversal. Rather, "when an administrative law judge identifies some severe impairments at [s]tep [two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non[-]severe, an[y] error in failing to identify all severe impairments at [s]tep [two] is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen [the] functional effects of [the]

7

impairments erroneously determined to be non-severe at [s]tep [two] are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"); *Panfil v. Comm'r of Soc. Sec.*, No. 16-CV-947-MJR, 2018 WL 4610531, at *4 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").

       Plaintiff essentially argues that the ALJ ignored Plaintiff's fibromyalgia diagnosis in rendering her decision.  Having reviewed the record, this Court does not agree.  Although the ALJ did not find Plaintiff's fibromyalgia to be severe, she explicitly considered the evidence related to Plaintiff's fibromyalgia and accommodated her symptoms by limiting Plaintiff to a reduced range of sedentary work.  Tr. at 18-23. "Fibromyalgia is a long-lasting or chronic disorder that causes muscle pain and fatigue (feeling tired)."  *See* https://www.niams.nih.gov/health-topics/fibromyalgia. At her hearing, Plaintiff testified that her fibromyalgia manifested itself in body-wide joint pain and headaches.  Tr. at 45-46.

The ALJ acknowledged Plaintiff's diagnosis and her related symptoms in her RFC analysis.  For example, the ALJ cited to records from Plaintiff's rheumatologist who diagnosed her with fibromyalgia, but noted that the medication Plaquenil provided her with relief from her muscle spasms.  Tr. 21, 943; *see generally White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (finding harmless an ALJ's failure to identify the plaintiff's obesity when the ALJ cited to medical reports referencing the condition).  The ALJ acknowledged Plaintiff's fibromyalgia symptoms of joint pain and headaches (Tr. at 20-22), and cited Plaintiff's testimony that she had trouble gripping objects.  Tr. at 22.  At the same time, the ALJ recognized that Plaintiff had full grip strength at her consultative examination, and that the record did not otherwise support a finding that she was limited in the use of her hands.  Tr. 22 (citing to Tr. 551); *see also* Tr. 592, 595, 598, 602, 607, 747, 750 (records documenting that Plaintiff had normal upper extremity function, including full range of motion and intact strength in the upper body).

To the extent that they were supported by medical evidence, the ALJ credited Plaintiff's subjective complaints.  The ALJ concluded, for example, that Plaintiff's pain and headaches prevented her from performing her past work as a teacher and as a social services aide.  Tr. at 23.  The ALJ also limited Plaintiff to sedentary work, which is the most restrictive work level listed in the regulations.  Tr. 19-23; *see* Social Security Ruling (SSR) 96-9p (noting that sedentary work "represents a significantly restricted range of work" and that "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations").

However, the ALJ also concluded that Plaintiff's pain, headaches, and other symptoms were not so severe as to preclude sedentary work.  This conclusion is supported by substantial evidence.  It is axiomatic that the mere presence of symptoms, without more, is not disabling.  *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (reasoning that "disability requires more than mere inability to work without pain"). Rather, "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).  Plaintiff has failed to show that her pain reached this disabling level.

The record shows that Plaintiff was treated for her fibromyalgia pain with medication, and that her symptoms improved with Plaquenil and naproxen.  Tr. at 45, 601, 943.  Moreover, Plaintiff's medical providers routinely observed that she was in no acute distress, including at her rheumatology visits, notwithstanding her subjective reports of pain.  Tr. at 297, 333, 591, 595, 799, 803, 808, 811, 815.  Other evidence supports the finding that Plaintiff was capable of some work.  For example, consultative examiner Dr. Hongbiao Liu considered Plaintiff's reports of arthritis, prior injuries, hand and finger numbness, migraines, and "whole body pain," and found that Plaintiff had only a mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching.  Tr. at 551.  The ALJ gave "significant weight" to this opinion because it was consistent with Plaintiff's imaging and examinations.  Tr. at 21; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical

opinion."); *see also Mongeur*, 722 F.2d at 1039 (2d Cir. 1983) (the opinions of consultative doctors can constitute substantial evidence).

The ALJ also reasoned that Plaintiff's daily activities - shopping, attending church and bible study, washing dishes, dusting, and cleaning counters - were inconsistent with her reports of disabling pain.  Tr. at 22-23 (citing to Tr. at 38, 42-43, 221-23, 544, 549); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (noting that daily activities are a relevant factor in determining a claimant's RFC); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (finding that the claimant's ability to perform daily activities, such as cooking and shopping, supported the ALJ's conclusion that she could perform sedentary work despite pain, even where the claimant testified she needed to perform activities slowly and with a rest break).

The ALJ further noted that the doctor and physician's assistant who treated Plaintiff for fibromyalgia recommended that Plaintiff exercise and stay active.  Tr. at 22 (citing to Tr. 946, 954, 960).  This demonstrates that her medical providers believed her to be capable of physical activity.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (noting that the ALJ considers what medical sources say about a plaintiff's pain or other symptoms in formulating the RFC).  And it appears that Plaintiff was capable of exercising.  In November 2017, for example, Plaintiff reported that she was swimming regularly.  Tr. at 601; *see also* Tr. at 348 (Plaintiff reporting that she was swimming 20-30 laps three times per week in November 2016).  This evidence is consistent with the ALJ's finding that while Plaintiff's conditions were limiting, they did not preclude sedentary work.  *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)

(finding no error in an ALJ's omission of fibromyalgia in the decision while noting the plaintiff's doctor encouraged the plaintiff to continue exercising and attend physical therapy); *Bowden v. Comm'r of Soc. Sec.*, No. 1:18-CV-0082, 2019 WL 3027803, at *5 (W.D.N.Y. July 11, 2019) ("Courts have found that a recommendation that a claimant exercise supports a finding that the claimant could do light work."); *Nix v. Colvin*, No. 15-CV-0328-FPG, 2016 WL 3681463, at *5 (W.D.N.Y. July 6, 2016) (holding that a treating provider's recommendation that claimant exercise was not inconsistent with sedentary work).

The ALJ also considered Plaintiff's migraine headaches, which were possibly related to her fibromyalgia, in evaluating her RFC.  Tr. at 21-22, 45-46.  As the ALJ noted, Plaintiff had migraines for 30 years, but her condition did not prevent her from working prior to the alleged onset date.  Tr. at 21-22, 548; *Snell v. Apfel*, 177 F.3d 128, 136 (2d Cir. 1999) ("Clearly, if [claimant's] mental condition never deteriorated from what it was while she was working, she cannot claim to have become disabled by reason of [that] mental impairment.").  Moreover, as the ALJ noted, Plaintiff's records did not reflect that she was limited by her migraines, only that her migraines improved with medication.  Tr. at 21-22; *see Dumas*, 712 F.2d at 1553 ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").  For example, Plaintiff's neurologist, Dr. Melissa Rayhill, noted that although her headaches were still "bothersome," Plaintiff's migraines had improved with treatment.  Tr. at 22; *see also* Tr. at 948, 952.  Another neurologist, Dr. Ajay Abad, noted during numerous visits that Plaintiff's headaches were generally relieved and reduced with medication.  Tr. at 353, 476, 531.

Based on the foregoing, this Court finds that the ALJ appropriately considered and accommodated Plaintiff's fibromyalgia symptoms. Tr. at 19-23. Moreover, the ALJ's RFC was supported by substantial evidence, including objective medical evidence and imaging, examination findings, medical opinions, and Plaintiff's subjective complaints. Tr. at 19-23. Any error in the ALJ's failure to discuss fibromyalgia explicitly at step two was harmless because she considered Plaintiff's fibromyalgia symptoms at subsequent steps. *See Reices-Colon*, 523 F. App'x at 798; *see also Mendez v. Comm'r of Soc. Sec.*, No. 19-CV-01036, 2020 WL 6424141, at \*6 (W.D.N.Y. Nov. 2, 2020) (stating that "the ALJ did not identify the impairment [of fibromyalgia] but considered the effects of the impairment [such as alleged pain] throughout the analysis of the claim and [thus] any error is harmless.")

Moreover, Plaintiff has failed to meet her burden to show that her fibromyalgia imposed a greater restriction on her ability to work than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (holding that the claimant "had a duty to prove a more restrictive RFC, and failed to do so"); *White*, 753 F. App'x at 81 ("In any event, because [the plaintiff] never specified how his obesity further limited his functioning, any error on the ALJ's part [in failing to discuss a particular impairment at step two] was harmless."); *Rivers*, 280 F. App'x at 22 (rejecting the argument that the ALJ did not adequately consider a plaintiff's fibromyalgia diagnosis when the plaintiff presented no medical finding that the condition caused marked limitations in functioning); *see also Ana H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-432-DB, 2020 WL 6875252, at \*10 (W.D.N.Y. Nov. 23, 2020) ("Plaintiff has failed to identify, based on objective evidence, that additional limitations were warranted because of [impairments

not discussed at step two].  Thus, she has failed to meet her burden of proving she

could not perform the RFC as formulated by the ALJ."); *Sanchez v. Comm'r of Soc.*

*Sec.*, No. 19-CV-0408MWP, 2020 WL 5107568, at *6 (W.D.N.Y. Aug. 31, 2020) (finding

harmless an ALJ's omission of degenerative disc disease at step two in part because

the plaintiff "failed to point to any evidence demonstrating that his back pain caused any

additional limitations").

 Although Plaintiff generally alleges symptoms of "widespread pain in her

body," fatigue, waking unrefreshed, cognitive symptoms, brain fog, insomnia, anxiety,

and depression, she does not specify how these symptoms restrict her from performing

a reduced range of sedentary work.  Dkt. No. 170-1, pp. 14- 15.  To the contrary, Dr. Liu

(consultative examiner), Dr. G. Feldman (the non-examining State agency review

physician), and Dr. Cheryle R. Hart (one of Plaintiff's treating physicians) all opined that

Plaintiff could perform sedentary work.  Tr. at 69-70, 84-85, 297-98, 306, 311, 548, 551,

557-59; *see Boltz v. Berryhill*, No. 15-CV-00587-FPG, 2017 WL 999204, at *3-4

(W.D.N.Y. Mar. 15, 2017) (a consultative examiner's opinion that the claimant had mild

to moderate physical limitations supported a sedentary RFC); *Frye ex rel. A.O. v.*

*Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical

consultant constitutes expert opinion evidence which can be given weight if supported

by medical evidence in the record.").  In the absence of any evidence that Plaintiff's

fibromyalgia caused limitations beyond what the ALJ found, there is no basis to remand

this case.  *See Coston v. Saul*, No. 1:18-CV-00251(JJM), 2019 WL 4291314, at *5

(W.D.N.Y. Sept. 11, 2019) ("The fact that plaintiff was diagnosed with other physical and

mental impairments does not render the step two severity analysis and subsequent

steps flawed where, as here, there is no evidence that these impairments resulted in additional limitations.").

Based on the foregoing, this Court finds that the ALJ did not err in failing to find Plaintiff's fibromyalgia a medically determinable impairment at step two.  And any error was harmless as the ALJ considered all of Plaintiff's symptoms in formulating the RFC.  Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***."  *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is hereby DENIED, and the Commissioner's motion for

judgment on the pleadings (Dkt. No. 18) is GRANTED.  The Clerk of the Court is directed to close this case.

       **SO ORDERED.**

DATED:     Buffalo, New York
              June 2, 2021

                         ***s/ H. Kenneth Schroeder, Jr.***
                         **H. KENNETH SCHROEDER, JR.**
                         **United States Magistrate Judge**